26 F.3d 132
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Carol PHINNEY; Mr. and Mrs. Donald Ozburn, Plaintiffs-Appellants,
v.
COUNTY OF SAN DIEGO, Office of the County Coroner; David J.
Stark, R. Steve Phillips, M.D.; Robert Bucklin,
M.D., Defendants-Appellees.
 No. 92-56512.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1994.
Decided June 7, 1994.
 
 1
 Before: BROWNING, and FLETCHER, Circuit Judges, and FITZGERALD, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs can establish a constitutional deprivation under Sec. 1983 only by proving the individual defendants intentionally misled authorities as to the cause of Travis's death. See Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); Estelle v. Gamble, 429 U.S. 97, 106 (1976) (no constitutional violation where doctor commits malpractice). After viewing the facts in the light most favorable to the plaintiffs, we conclude that plaintiffs did not offer such proof.[1]
 
 A.
 
 4
 Guard's declaration states defendant Phillips disregarded Travis's prior medical history, failed to perform certain standard tests and procedures, and failed to take samples from crucial organs before the body was destroyed; it further states defendant Bucklin failed to assure the autopsy on Travis was performed according to the standard of care customary in the profession. At most, these facts suggest defendants Bucklin and Phillips were negligent.
 
 
 5
 Guard's declaration also states defendant Phillips was an associate of Travis's treating physicians and changed his conclusions regarding the cause of Travis's death after having several conversations with these physicians. These conversations were not recorded or otherwise documented. No evidence is offered as to their content. These facts provide no significant support for plaintiffs' theory that defendant Phillips falsified the autopsy report.
 
 
 6
 Finally, Guard's declaration states defendant Phillips and Travis's treating physicians were predisposed to conclude that a child's injuries resulted from child abuse. This fact may offer some basis for an inference that defendant Phillips produced an inaccurate autopsy report because he suffered from clouded judgment, but offers no support for the theory that he intended to produce an inaccurate report.[2]
 
 B.
 
 7
 Guard's declaration states that defendant Stark retained defendant Phillips to perform the autopsy and that defendant Phillips was both unqualified and unobjective. Viewed most favorably to plaintiffs, these facts indicate, at most, that defendant Stark was negligent when he hired defendant Phillips, not that he intended that Phillips produce an inaccurate autopsy report.
 
 C.
 
 8
 Plaintiffs' failure to produce facts showing a constitutional deprivation also precludes recovery against the County. Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992).
 
 
 9
 AFFIRMED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior Judge, United States District Court for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Whether the Fourth Amended Complaint or the Fifth Amended Complaint is irrelevant. Plaintiffs cannot defend against summary judgment by referring to the allegations in their complaint. Fed.R.Civ.P. 56(e) ("[A]n adverse party may not rest upon the mere allegation or denials of the adverse party's pleading."). The analysis must focus on the declaration filed by plaintiffs in opposition to summary judgment--the declaration of Dr. Homez Guard
 
 
 [2]
 The plaintiffs' papers hint that Travis's treating physicians were guilty of malpractice. Yet, Dr. Guard's theory is not that Travis died from inadequate or improper medical treatment, but that he suffered a serious fall, struck his head, and drowned in bath water